**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

VECTREN CORPORATION, DERRICK BURKS, CARL L. CHAPMAN, JAMES H. DEGRAFFENREIDT, JR., JOHN D. ENGELBRECHT, ANTON H. GEORGE, ROBERT G. JONES, PATRICK K. MULLEN, R. DANIEL SADLIER, MICHAEL L. SMITH, TERESA J. TANNER, and JEAN L. WOJTOWICZ,

Defendants.

Case No. 1:18-cv-02263

CLASS ACTION

JURY TRIAL DEMANDED

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael Kent, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on April 23, 2018 (the "Proposed Transaction"), pursuant to which the Vectren Corporation ("Vectren" or the "Company") will be acquired by CenterPoint Energy, Inc. ("Parent") and Pacer Merger Sub, Inc. ("Merger Sub," and together with Parent, "CenterPoint").

2. On April 21, 2018, Vectren's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with CenterPoint. Pursuant to the terms of the Merger Agreement, Vectren

stockholders will receive $72.00 in cash for each share of Vectren stock that they own.

3. On June 18, 2018, defendants filed a preliminary proxy statement with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction (the "Preliminary Proxy Statement"). The Preliminary Proxy Statement omiited certain material information in connection with the Proposed Transaction that made it materially false and misleading.

4. On July 13, 2018, the Company filed its Definitive Proxy Statement with the SEC on Form DEFM 14A (the "Definitive Proxy Statement"). The Definitive Proxy Statement provides that the Company has scheduled a special stockholder meeting for August 28, 2018, at which time its stockholders will be asked to approve the Merger Agreement and the Proposed Transaction.

5. The Definitive Proxy Statement, like the Preliminary Proxy Statement, omits material information with respect to the Proposed Transaction, which renders the Definitive Proxy Statement false and misleading. Accordingly, defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Definitive Proxy Statement.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) because the claims asserted herein arise under Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder and Section 20(a) of the 1934 Act.

7. This Court has personal jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is

an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under Section 27 of the 1934 Act (15 U.S.C. § 78aa), as well as 28 U.S.C. § 1391(b), because (i) the conduct at issue took place and had an effect in this District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9. Plaintiff Michael Kent is, and has been continuously throughout all times relevant hereto, the owner of Vectren common stock.

10. Defendant Vectren is an Indiana corporation and maintains its principal executive offices at One Vectren Square, Evansville, Indiana 47708. Vectren's common stock is traded on the NYSE under the ticker symbol "VVC."

11. Defendant Derrick Burks ("Burks") is a director of Vectren.

12. Defendant Carl L. Chapman ("Chapman") is President, Chief Executive Officer ("CEO"), and Chairman of the Board of Vectren.

13. Defendant James H. DeGraffenreidt, Jr. ("DeGraffenreidt") is a director of Vectren.

14. Defendant John D. Engelbrecht ("Engelbrecht") is a director of Vectren.

15. Defendant Anton H. George ("George") is a director of Vectren.

16. Defendant Robert G. Jones ("Jones") is a director of Vectren.

17. Defendant Patrick K. Mullen ("Mullen") is a director of Vectren.

18. Defendant R. Daniel Sadlier ("Sadlier") is a director of Vectren.

19. Defendant Michael L. Smith ("Smith") is a director of Vectren.

20. Defendant Teresa J. Tanner ("Tanner") is a director of Vectren.

21. Defendant Jean L. Wojtowicz ("Wojtowicz") is a director of Vectren.

22. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

**CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Vectren (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of April 20, 2018, there were approximately 83,080,695 shares of Vectren common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would

create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

30. Vectren is an energy holding company. The Company's energy delivery subsidiaries provide gas and/or electricity to more than 1 million customers in adjoining service territories that cover nearly two-thirds of Indiana and about 20 percent of Ohio, primarily in the west central area.

31. Vectren's nonutility subsidiaries and affiliates currently offer energy-related products and services to customers throughout the U.S. These include infrastructure services and energy services.

32. On April 21, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with CenterPoint.

33. Pursuant to the terms of the Merger Agreement, Vectren stockholders will receive $72.00 in cash for each share of Vectren stock that they own.

34. According to the press release announcing the Proposed Transaction:

> CenterPoint Energy, Inc. (NYSE: CNP) and Vectren Corporation (NYSE: VVC) today announced they have entered into a definitive merger agreement to form a

leading energy delivery, infrastructure and services company serving more than 7 million customers across the United States. Under the terms of the agreement, which have been unanimously approved by both CenterPoint Energy's and Vectren's Boards of Directors, Vectren shareholders will receive $72.00 in cash for each share of Vectren common stock. CenterPoint Energy will also assume all outstanding Vectren net debt. . . .

**The Combined Company**
The combined company is expected to have electric and natural gas delivery operations in eight states with assets totaling $29 billion and an enterprise value of $27 billion.

Headquartered in Houston, CenterPoint Energy has significant natural gas operations in Arkansas, Louisiana, Minnesota, Mississippi, Oklahoma and Texas, serving more than 3.4 million customers. The company also delivers electricity to more than 2.4 million customers in the greater Houston area. CenterPoint Energy's competitive natural gas sales and services business serves more than 100,000 customers in 33 states. The company employs nearly 8,000.

Headquartered in Evansville, Ind., Vectren provides natural gas to more than 1 million customers in Indiana and Ohio, and electricity to 145,000 customers in Indiana. Vectren's non-utility businesses include Infrastructure Services (VISCO), which provides underground pipeline construction, repair and replacement services, and Energy Services (VESCO), which offers performance contracting services and renewable energy project development. CenterPoint Energy intends to continue operating VISCO out of Indianapolis, Ind., and VESCO out of Newburgh, Ind. (near Evansville). Vectren also owns and operates power generation assets in Indiana with a production capacity of 1,248 megawatts. The company employs approximately 5,500.

Following the completion of the merger, the combined company expects to execute a unified business strategy focused on the safe and reliable delivery of electricity, natural gas and related services to customers. . . .

**Earnings Impact**
With the merger, CenterPoint Energy expects to maintain an annual guidance basis EPS growth target of 5 to 7 percent in 2019 and 2020, excluding any one-time charges related to the merger.

**Leadership**
At the closing of the transaction, Scott M. Prochazka will serve as president and CEO of the combined company. The full executive team for the combined company will be announced prior to or in conjunction with the closing of the merger. The natural gas utilities operations of the combined company, as well as that businesses' lead executive, will be headquartered in Evansville. Additionally, CenterPoint Energy will establish a chief business officer for Vectren's electric

> business who will directly report to CenterPoint Energy's CEO and spearhead southwestern Indiana's electric grid modernization and generation transition initiatives recently underway. In addition to utility field employees, CenterPoint Energy will retain key operational activities in support of the utilities in Evansville. Integration teams co-led by leaders from each company are in the process of being established and will be centered in Evansville. These teams will be responsible for identifying best practices and facilitating the integration of the two companies. . . .
>
> **Terms and Conditions**
> The closing of the transaction is subject to Vectren shareholder approval, approvals from the Federal Energy Regulatory Commission and Federal Communications Commission, and expiration or termination of the Hart-Scott-Rodino waiting period. In addition to these conditions, the company will make certain regulatory filings in Indiana and Ohio.
>
> Subject to these conditions, the merger is expected to close by the first quarter 2019. Until the closing, CenterPoint Energy and Vectren will remain separate companies.

***The Definitive Proxy Statement Omits Material Information, Rendering It False and Misleading***

35. Defendants filed the Definitive Proxy Statement with the SEC in connection with the Proposed Transaction.

36. The Definitive Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Definitive Proxy Statement false and misleading.

37. The Definitive Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch").

38. With respect to the Company's financial projections, the Definitive Proxy Statement fails to disclose projected free cash flows and all line items used to calculate free cash flow.

39. With respect to BofA Merrill Lynch's Discounted Cash Flow Analysis, the Definitive Proxy Statement fails to disclose: (i) unlevered, after-tax free cash flows and all

underlying line items; (ii) the terminal values for each Company business segment; (iii) the inputs and assumptions underlying the discount rates used by BofA Merrill Lynch in the analysis; and (iv) net debt.

40. With respect to BofA Merrill Lynch's Selected Publicly Traded Companies Analysis, the Definitive Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by BofA Merrill Lynch in the analysis.

41. With respect to BofA Merrill Lynch's Selected Precedent Transactions Analysis, the Definitive Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by BofA Merrill Lynch in the analysis.

42. The disclosure of projected financial information is material because it provides stockholders with a basis to understand the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Additionally, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43. The Definitive Proxy Statement also fails to disclose whether the Company executed any confidentiality agreements that contained "don't ask, don't waive" provisions that prevented the counterparties from requesting waivers of standstill provisions to submit superior offers to acquire the Company.

44. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

45. The omission of the above-referenced material information renders the Definitive Proxy Statement false and misleading, including, *inter alia*, the following sections of the Definitive Proxy Statement: (i) Background of the Merger; Recommendation of Company's Board of Directors and its Reasons for the Merger; (iii) Opinion of the Company's Financial Advisor; and (iv) Forward-Looking Financial Information. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**COUNT I**

**(On Behalf of Plaintiff and the Class Against Vectren and the Individual Defendants for Violations of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Definitive Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Vectren is liable as the issuer of these statements.

48. The Definitive Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Definitive Proxy Statement.

49. The Individual Defendants were at least negligent in filing the Definitive Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Definitive Proxy

Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Definitive Proxy Statement and in other information reasonably available to stockholders.

51. The Definitive Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Definitive Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**(On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the 1934 Act)**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Vectren within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Vectren and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Definitive Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Definitive Proxy Statement alleged by plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Definitive Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Definitive Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy statement that does

not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Section 14(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder, and/or Section 20(a) of the 1934 Act;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 24, 2018

Respectfully submitted,

RILEY WILLIAMS & PIATT, LLC

By: */s/ James A. Piatt*
William N. Riley (#14941-49)
James A. Piatt (#28320-49)
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
(317) 633-5270
Fax: (317) 426-3348
wriley@rwp-law.com
jpiatt@rwp-law.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800